UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTION, INC.                    CIVIL ACTION

VERSUS

KCK HOLDINGS, LLC, ET AL.                 NO.: 14-00269-BAJ-RLB

RULING AND ORDER

This matter is before the Court on cross motions for summary judgment filed by each of the parties. (Docs. 46, 47). The Court has considered the respective oppositions. (Docs. 52, 54). For the following reasons, Defendant Terral Jackson's ("Defendant") motion shall be granted and J&J Sports Production, Inc.'s ("Plaintiff") motion shall be denied.

I.   **Factual History**

This action concerns the live broadcast of the Floyd Mayweather, Jr. v. Miguel Cotto WBA World Light Middleweight Championship Fight (the "fight") on May 5, 2012. (Doc. 1 at ¶ 19). Plaintiff is a distributor of closed circuit pay-per view boxing and special events in the United States. (*Id*. at ¶ 10). Plaintiff asserts that it was granted the exclusive rights to broadcast the fight commercially nationwide. (*Id*. at ¶ 19). Plaintiff further asserts that it entered into sublicensing agreements which granted commercial establishments in Louisiana and elsewhere the rights to publicly exhibit the fight within their establishments.  (*Id*. at ¶ 20). Defendant was an officer of KCK Holdings, L.L.C. ("KCK"), a Louisiana limited liability company

that has a place of business in Baton Rouge, Louisiana named The M Bar. (*Id.* at ¶ 3, 8, 11). Plaintiff asserts that Defendant and other officers of KCK directed its employees at The M Bar "to unlawfully intercept and broadcast [the fight] on KCK's premises." (*Id.* at ¶¶ 12—14). On May 1, 2014, Plaintiff initiated this lawsuit against KCK and its officers, including Defendant, asserting that they violated 47 U.S.C. §§ 553 and 605, as well as 18 U.S.C. §§ 2511 and 2520. (Doc. 1 at ¶¶ 18—33). The other officers of KCK named in Plaintiff's lawsuit were Keith Hodge, Kevin Work, and J. Camille Whitworth. (Doc. 1 at ¶ 3).

## II.    Procedural History

Without opposition from Plaintiff, defendants J. Camille Whitworth and Kevin Work were dismissed as parties to this lawsuit on July 16, 2014. (Docs. 12—14). On August 8, 2014, the Clerk of Court granted Plaintiff's motion for clerk's entry of default against Defendant. (Doc. 20). Defendant then filed a motion to set aside default on August 15, 2014. (Doc. 22). Before this Court acted on Defendant's motion, the Clerk of Court granted Plaintiff's motion for clerk's entry of default against Keith Hodge and KCK on December 15, 2014. (Doc. 35). This Court granted Defendant's motion to set aside default on March 25, 2015. (Doc. 38). On June 11, 2015, Plaintiff filed a motion for default judgment under Federal Rule of Civil Procedure 55 as to Keith Hodge and KCK, (Doc. 42), which was subsequently granted by this Court on August 8, 2015, (Doc. 44). As a result, only Defendant remains in this lawsuit.

2

### III.   SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (internal quotations omitted). Summary

judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer,* 455 F.2d 1236, 1241 (5th Cir.1972).

## IV.   ANALYSIS

Plaintiff's motion for summary judgment and memorandum in support of its motion discuss the issue of Defendant's personal liability *ad naseum*. (*See* Docs. 46, 46-10). Yet as Defendant recognizes in its opposition, Plaintiff's motion fails to show how the facts and evidence it relies upon are material to the elements of the claims it asserts. In fact, a review of Plaintiff's memorandum in support of its motion reveals that it did not once refer to the statutes upon which it bases its claims, nor did it mention the elements that it was required to prove to support those claims. (*Id.*). Put differently, Plaintiff failed to discuss the claims for which it asserts that Defendant is personally liable and in so doing, it put the horse before the cart. *See also J & J Sports Productions, Inc. v. Evolution Entm't Grp., LLC*, No. 13-ca-5178, 2014 WL 3587370, at *1 (E.D. La. July 21, 2014) ("In its memorandum in support, Plaintiff focuses on imposing personal liability against Defendants Tigler and Thomas, without addressing the elements of its causes of action or explaining how

4

how the summary judgment evidence entitles it to judgment as a matter of law."). Consequently, Plaintiff's motion can go nowhere. This Court cannot solve Plaintiff's drafting mistakes and cannot distill how certain facts and evidence apply to the claims before it in the absence of cogent briefing.

Defendant, on the other hand, asserts in his motion for summary judgment that Plaintiff has not set forth sufficient evidence to prove one or more essential elements of its statutory claims. (Doc. 47 at ¶1). Defendant further asserts that even if Plaintiff was able to prove a statutory violation, it cannot prove that Defendant is personally liable for the complained of conduct. (*Id*.). Given the ambiguity in the case law on the latter issue, this Court will first address Defendant's motion as to the viability of Plaintiff's underlying claims.

## I.   Violation of 47 U.S.C. § 605(a), (e)(3) and (e)(4)

Plaintiff asserts that Defendant violated § 605 because, either through direct action or through the action of his employees, The M Bar unlawfully intercepted and exhibited the fight for financial profit. (Doc. 1 at ¶ 22—27). Plaintiff further asserts that the fight was transmitted to The M Bar "by way of cable television signals." (Doc. 46-1 at ¶ 1).   Defendant contends that the Fifth Circuit has instructed that § 605 does not apply to cable communications and, consequently, Plaintiff's claim under § 605 cannot survive summary judgment.   (Doc. 47-2 at p. 5). Defendant relies upon *J&J Sports Productions, Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346 (5th Cir. 2014) to support this assertion.

This Court's review of *Mandell* indicates that Defendant's argument is well founded. In *Mandell*, Plaintiff sought relief based upon the same statutory violations arising under similar circumstances. The Fifth Circuit stated unequivocally that "§ 605 does not encompass the conduct presented here: the receipt or interception of communications by wire from a cable system." *Mandell*, 751 F.3d 346, 351. Because it is undisputed that The M Bar received the fight by way of cable transmission,  (Doc. 46-1 at ¶ 1; Doc. 47-1 at p. 1), Defendant's motion seeking dismissal of Plaintiff's claim under § 605 is **GRANTED**, and Plaintiff's motion seeking judgment under § 605 is **DENIED**.[1] *See Mandell*, 751 F.3d 346.

## II.    Violation of 18 U.S.C. §§ 2511 and 2520

Likewise, Plaintiff asserts that Defendant violated 18 U.S.C. § 2511 because, either through direct action or through the action of his employees, The M Bar unlawfully intercepted and exhibited the fight for financial profit. (Doc. 1 at ¶¶ 22—27). "Together, 18 U.S.C. §§ 2511 (the criminal wiretap statute) and 2520 provide a private cause of action for the intentional interception of electronic communications, including both satellite and cable transmissions. *See* 18 U.S.C. §§ 2511(1)(a) and 2520(a); *DirecTV, Inc. v. Webb,* 545 F.3d 837, 844 (9th Cir.2008). Proof of a violation of § 2511(1)(a) entails proof of an intentional, illegal interception. *See DirecTV, Inc. v. Robson,* 420 F.3d 532, 537 (5th Cir.2006)." *J & J Sports Prods., Inc. v. Giuseppe's*

---

[1] Thus, this Court finds that summary judgment is proper on this claim irrespective of the issue of personal liability discussed *infra*.

*Bistro, LLC*, No. 14-cv-1326, 2015 WL 1540364, at *6 (E.D. La. Apr. 6, 2015) (citations in the original).

Relative to this claim, Defendant contends that summary judgment should be granted in his favor for two reasons. First, Defendant argues that Plaintiff has failed to offer any evidence to show that an unlawful interception of the fight took place. (Doc. 47-2 at pp. 4—5). In support, Defendant asserts that Plaintiff has not adequately demonstrated that The M Bar was able to air the fight by way of "tapping into a cable communication network, or using a pirate access device to decrypt an encrypted radio or satellite communication." (*Id*. at p. 5). To the extent an interception did take place, Defendant next argues that Plaintiff has failed to offer any evidence which demonstrates that he or anyone else involved with the alleged interception knew that such an interception was illegal. (Doc. 47-2 at p. 5).

Defendant's arguments in favor of summary judgment on this claim are unavailing. With respect to his first argument, Defendant has not cited any authority for the proposition that a violation of § 2511 requires evidence of the use of an external device or a physical intrusion into, in this instance, a cable network. *See, e.g., Giuseppe's Bistro*, 2015 WL 1540364, at *6 ("Although it is true that many § 2511 cases involve pirate access devices, this Court is not aware of any binding authority articulating the need for evidence of such a device."). In contrast, Plaintiff has suggested, for example, that an interception can occur by way of a "purposeful misrepresentation of a commercial establishment as a residential property to allow

7

the fraudulent purchase of a [program] at the residential rate . . . ." (Doc. 46-2 at p. 4; Doc 54-4 at p. 4).

Defendant's second argument relies upon *U.S. v. Wuliger*, 981 F.2d 1497, 1501 (6th Cir. 1992), *cert. denied*, 510 U.S. 1191 (1993), *Williams v. Poulos*, 11 F.3d 271, 284 (11th Cir. 1993), and *McCann v. Iroquois Memorial Hospital*, 622 F.3d 745, 753 (7th Cir. 2010) for the proposition that Plaintiff was required to set forth evidence demonstrating actual knowledge of the unlawful interception. (Doc. 47-2 at pp 4—5). Defendant's reliance on these cases does not withstand scrutiny. All of these cases discuss actual knowledge in the context of §§ 2511(1)(c) and (1)(d). Unlike § 2511(1)(a), these two provisions address instances where a party discloses or uses intercepted communications but does not effectuate the interception *ab initio*. *See* 18 U.S.C. §§ 2511(1)(c) and (1)(d). These two provisions do not alter § 2511(1)(a), which makes it a violation to intentionally intercept a wire communication.[2] For these reasons, this Court concludes that there is at least a dispute of material fact as to whether a violation of § 2511 occurred.

---

[2] This Court recognizes that intent is an essential element of a claim for a violation of § 2511(1)(a), and that Defendant, in his *opposition*, asserts that Plaintiff failed to set forth any evidence regarding his "*mens rea*." (Doc. 52 at p. 6). To the extent this Court is willing to impute this argument to Defendant's motion for summary judgment in the context of § 2511(1)(a), this Court also recognizes that Plaintiff attached to its opposition an affidavit of its President, Joseph Gagliardi, who states in pertinent part: "It is essential that I communicate to the Court that to the best of my knowledge our programming is *not* and cannot be mistakenly, innocently or accidently intercepted." (Doc. 54-4 at p. 3) (emphasis original). This Court finds that the issue of intent cannot be resolved on a motion for summary judgment on the record before it.

### III.   Violation of 47 U.S.C. § 553

Lastly, Plaintiff asserts that Defendant violated § 553 because, either through direct action or through the action of his employees, The M Bar unlawfully intercepted and exhibited the fight for financial profit. (Doc. 1 at ¶¶ 28—32). Section 553(a)(1) imposes civil and criminal liability for "intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). As the Fifth Circuit has instructed, § 553(a)(1) "includes an essential exclusion, often referred to as a 'safe harbor,' that precludes the imposition of liability" if specific authorization is given from a cable operator to receive a transmission. *Mandell*, 751 F.3d 346, 348 (citing 47 U.S.C. § 553(a)(1)).

Relative to this claim, Defendant again contends that summary judgment should be granted in his favor for two reasons. First, Defendant asserts that Plaintiff has not introduced any evidence demonstrating that it had the exclusive rights to license cable transmissions, as opposed to satellite transmissions, of the fight. (Doc. 47-2 at p. 6). Next, Defendant asserts that unless "[Plaintiff] can prove that [T]he M Bar utilized some kind of cable filter or other device to decrypt an encrypted or protected cable signal, or had some reason to know that the cable provider had no authority to deliver [the fight] to commercial establishments, [T]he M Bar cannot be found liable for a violation of § 553." (Doc. 47-2).

Defendant's first argument is unpersuasive. In its opposition, Plaintiff attached a copy of the licensing agreement wherein it acquired the rights to

9

broadcast the fight. (Doc. 54-5 at p. 2). Pursuant to this agreement, Plaintiff was granted "the exclusive license to exhibit" the fight to commercial establishments. (*Id*.). This Court finds that this document at the very least creates a factual dispute as to whether Plaintiff's rights were limited to satellite broadcasts.[3] (Doc. 54 at ¶ 4).

Defendant's second argument is also unpersuasive. Defendant essentially seeks to avail itself of the safe harbor provision contained in § 553(a)(1) as discussed in *Mandell*. Defendant asserts that The M Bar paid Cox Communications for cable service.[4] (Doc. 47-2 at p. 7). Because Plaintiff cannot state with certainty how The M Bar was able to show the fight without first paying the appropriate fee, Defendant suggests that it must follow that the fight was acquired by way of purchase from its cable provider. (Doc. 47-2 at pp. 6—7). Defendant has set forth no evidence, however, demonstrating that it was authorized to receive the fight from Cox Communications. In contrast, the defendants in *Mandell* provided evidence that a cable provider was paid to receive the broadcast at issue.[5] *Mandell*, 751 F.3d 346, 350. In light of Defendant's failure to demonstrate that The M Bar's exhibition of the fight fell under the § 553(a)(1) safe harbor provision, this Court finds that there is at least a dispute of material fact as to whether a violation of § 553 occurred.

---

[3] Given this finding, Plaintiff's argument raised in its motion for leave to supplement its motion and its opposition (Doc. 55) is rendered moot.

[4] Plaintiff also stated in its undisputed material facts that the fight was transmitted to The M Bar via cable television signals. (Doc. 46-1 at ¶ 1).

[5] In fact, the cable provider in *Mandell* admitted that it mistakenly distributed the broadcast. *Mandell*, 751 F.3d 346, n.4. Such is not the case here.

## IV.   Defendant's Personal Liability

In its Compliant, Plaintiff asserts that Defendant and other officers of KCK "supervised the activity of unlawfully intercepting [the fight]" and "specifically and willfully directed its employees to unlawfully intercept and broadcast [the fight] on KCK's premises." (Doc. 1 at ¶¶ 13—14, 22). Yet Plaintiff has set forth no evidence to suggest that Defendant directed or participated in the unlawful interception of the fight.[6] Therefore, Plaintiff has limited its claims against Defendant to liability based upon his status as a member of KCK. (*See* Doc. 1 at ¶¶ 9, 12, 14; Doc. 54-2 at p. 2; Doc. 46-1 at ¶ 1; Doc 46-10 at pp. 2—5).

Aside from evidence that he was a member of KCK, Defendant asserts that Plaintiff has not demonstrated that he exercised or possessed any management authority over The M Bar, that he participated in the showing of the fight at The M Bar, or that he was present during the showing of the fight. (Doc. 47-2 at p. 7). Without such evidence, Defendant argues that he cannot be held personally liable for the actions of KCK. (*Id.*). Plaintiff counters that as an officer of KCK, Defendant had an economic interest in The M Bar and the inherent ability to control it, which in its view is sufficient to impute liability to him personally. (Doc. 54-2 at p. 2).

---

[6] In Plaintiff's exhibit marked "P-4," Defendant denied that he told KCK employees to display the fight on televisions inside The M Bar. (Doc. 46-7 at p. 2). Defendant also denied that he personally advertised for the fight to be shown on the premises of The M Bar. (Doc. 46-8 at p. 3). This is the only discovery propounded on Defendant that pointedly sought to establish the degree of his involvement in showing the fight apart from his status as a member of KCK. In his opposition, Defendant introduced an affidavit stating that he never managed operations at The M Bar and that he was simply an investor in KCK. (Doc. 52-2). Defendant further states that he watched the fight at his home, that he did not know if the fight was shown at The M Bar, and that he did not direct or advise any employee of The M Bar to broadcast the fight. (*Id.*).

In a thorough ruling, the court in *Guiseppe's Bistro* analyzed the issue of a corporate officer's personal liability under similar claims and circumstances and determined that it is subject to "a sea of conflicting district court case law" for which the Fifth Circuit has yet to decisively weigh in. *Giuseppe's Bistro*, 2015 WL 1540364, at *3—4 (commenting also that "[i]t seems reasonable that in the absence of a contrary directive from Congress, the usual limited liability of an LLC's member would apply"). In a similar case involving Plaintiff, this Court commented in a default judgment setting that "[i]t is axiomatic that an officer of a corporation only incurs personal liability for its torts when he has participated in them, or has had knowledge of or given consent to them." *J & J Sports Prods., Inc. v. Vasquez Zavala, Inc.*, No. 14-cv-360-BAJ-SCR, 2015 WL 1800700, at *6 (M.D. La. Apr. 16, 2015) (citing *Lee v. Griffith*, 140 So. 142, 143 (La. 1932)).[7]

Upon review, this Court concludes that corporate officers maintain their limited liability when a broadcast is unlawfully shown on the premises of a corporate establishment. *Evolution*, 2014 WL 3587370, at *1—2; *Joe Hand Promotions, Inc. v. Breaktime Bar, LLC*, No. 12-ca-2618, 2014 WL 1870633, at *2 (W.D. La. May 8, 2014). *Contra J & J Sports Prods., Inc. v. Mahony's Irish Pub, LLC*, No. 13-ca-2627, 2014 WL 1918145, at *1 (E.D. La. May 13, 2014); *Zuffa, LLC v. Trappey*, No. 11-ca-0006, 2012 WL 1014690, at *4 (W.D. La. Mar. 22, 2012). Louisiana's law on corporate entities dictates that members are not typically liable

---

[7] Because the defendants did not respond to Plaintiff's requests for admission in *Vazquez Zavala*, they were deemed to have admitted that they participated in the unlawful broadcast at issue. *Id.*

for the debts, obligations, or liabilities of a limited liability company. *See* LA. REV. STAT. § 12:1320(B).  To be held personally liable, a member must commit fraud, breach a professional duty, or perform a negligent or wrongful act against another. *See* LA. REV. STAT. § 12:1320(D).

To the extent KCK is liable for the acts that resulted in the fight being shown at The M Bar under 47 U.S.C. § 553 and 18 U.S.C. §§ 2511, this Court finds that Plaintiff has not set forth any evidence to "show some act by [Defendant] to circumvent [his] limited liability as a member of a LLC." *See Joe Hand Promotions, Inc.*, 2014 WL 1870633, at *2. Furthermore, this Court finds that Plaintiff has not set forth sufficient evidence to satisfy its own standard for evaluating Defendant's personal liability, which requires, *inter alia*, that an LLC member have the power to control the operations of the establishment where a broadcast is unlawfully intercepted. (*See* Doc. 54-2 at p. 2).  Plaintiff's showing that Defendant was a member of KCK is insufficient on its own to demonstrate that he had this type of authority.  Consequently, Defendant's motion is **GRANTED** with respect to the remaining claims.

13

## V.   CONCLUSION

For reasons stated above,

**IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Doc. 46)** is **DENIED** and Defendant's **Motion for Summary Judgment (Doc. 47)** is **GRANTED**.

Baton Rouge, Louisiana, this 16th day of November, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

14